Good morning. May it please the Court, Gary Yerman on behalf of Petitioner. Petitioner in this case suggests that the BIA acted arbitrarily, irrationally, in contrary to Ninth Circuit law in denying their motion to reopen based upon change or worsening country conditions. In this case, the Petitioner, who was orderly mandate in the year 2000, submitted voluminous documentation supporting her claim that based upon the fact that she has three children born in the United States, the level of enforcement in her province in China has significantly worsened. The Petitioner is married and has three children. The law in China is clear that once her first child is born, if it's a female, you're allowed time over the years to petition to ask for a second child. Under no circumstances are you ever granted the exception to ask for a third child. In this situation, during the time of Petitioner's initial removal proceedings, the country report and other objective evidence that was submitted states that the enforcement of the one-child policy is uneven and is even less in the Fujian province. Now, in 2007, when the Petitioner submitted her objectively reasonable background, including the 2006 country report, the evidence clearly establishes a worsening of the enforcement of the family planning law. We begin by looking at the record on page 87. The village committee letter obtained by the Petitioner's mother, and I quote, the population of family planning committee of Fujian province states that foreign-born children, once they come back to China and are registered into the household registration, though they are of their own foreign nationalities, they still will be regarded as Chinese citizens. This document was obtained in 2007, far after the Petitioner's initial removal proceedings. Just so I'm clear, she was ordered removed in 2000. Correct. And she had three children in the United States. Is that true? That's correct. And then in 2007, she resubmitted the motion to reopen. Is that right? Correct. So she never left the country, apparently, between 2000 and 2007. So the order of removal was apparently not carried out. That's correct, Your Honor. And if that's a negative discretion, I would submit that that is possibly a correct assessment. But the statute is clear, 1003.2, that allows people who have been ordered removed to file a motion to reopen based upon worsening country conditions. Seven years later, though? Well, it's actually at the time when the new evidence is obtained. And so there has to have been the intent of the legislator, when they drew this law, to realize that people in some circumstances would overstay and not comply with their removal order, or else the motion to reopen would, in fact, not be effective. I'm not saying this is clearly not dispositive, but from her perspective, she knew that she was here illegally when she had the first child, the second child, the third child. That's correct. But that is not the issue that would allow her to present the motion to reopen. As this Court stated in Chen, change of personal circumstances does not warrant a reopening under the statute. It's the change of country conditions. So what the petitioner is arguing, Your Honor, is that since 2005, the evidence since 2005, 2006, and 2007, clearly show a worsening of the country conditions which warrant and permit her to file this motion to reopen. But there were both limitations or restrictions as early as or even prior to 2000, though. That's correct, Your Honor. The both limitations and restrictions began in 1979. The petitioner is not arguing the substance of the law has changed. He's saying it's being applied more stringently. Correct. And if we look closely at the evidence, we can see how this applies. Now, Your Honor, what is happening in this case? Counsel, counsel. Judge Gould with a question. Yes, Your Honor. What evidence is there in the record that would show that a village official has applied the China one-child policy ever against someone who has American citizen children? Your Honor, if we look to page 99 of the record, the administrative decision of the Fujian Family Plan, which is tantamount to a court decision, states that pursuant to the nationality law of the People's Republic of China and pertinent regulations, if either parent remains a Chinese national and citizen, the overseas child of such a couple shall be treated as a Chinese national and citizen for domestic administrative purposes regardless of the child's nationality conferred by his or her country of birth. I heard you argue that earlier, but that doesn't really answer my question, which is whether you have evidence that they have enforced a sterilization policy against anyone repatriated from the U.S. who has kids in the U.S. Well, Your Honor, unfortunately, there's none. Not the general statement that we consider the kid a Chinese citizen, but rather evidence that they have enforced the one-child policy against a parent who returns. Well, Your Honor, unfortunately, there's none in the record, and I can simply offer my rationale for why. The Chinese government is not going to admit that repatriated Chinese citizens with American children have been forcibly sterilized, so therefore we have to look to other sources. What other sources could there possibly be? Well, it would be the repatriated Chinese citizens, which begs the question, under what circumstances would a Chinese citizen who was deported from the United States, sent back to China, sterilized by the Chinese government, seek redress at the American consulate? It would prove futile. But the country conditions report would be able to capture that type of information. Yes, Your Honor, but the country conditions report is based upon sporadic and arbitrary reporting. Now, it is also based upon people who apply for visas at the U.S. consulate through certain questionnaires. And again, it begs the question, under what circumstance would a Chinese national who was already deported from the United States be attempting to illegally apply for a visa to come here to the United States, to the U.S. consulate? And I offer that the circumstance would be zero percent. So it is completely raising a burden, a threshold, which is unattainable to seek specific instances from people who have been repatriated back to China to ask them to report. Or family members who live there and knew about these circumstances, professors who study the culture of China. There are a number of sources that could be tapped to get this kind of information if, in fact, this was happening. Then you would have to say that the simplest way to get around the Chinese family planning law would be for a Chinese citizen to simply go to another country, whether it be Korea, Japan, the United States, have two or three children, and then return back to China. And then you would usurp the Chinese family planning law by saying, well, we've had children outside of China. It's simply not credible to think that the Chinese government would allow such usurpation. Well, that may not even be a word. It's close. Okay. To get around the family planning law. And we're talking about, Your Honor, we're talking about the most closed, tight-fisted, human rights-abusing country in the world today. That's debatable. But in any event, do you want to save any time for rebuttal? Yes, I would, Your Honor. All right. Thank you. Good morning, Your Honors. May I please court? Michael Heiss on behalf of the respondent of the Attorney General of the United States. In this case, the board properly exercised its ample discretion to deny Lynn's motion to reopen, untimely motion to reopen, because she failed to demonstrate change country conditions and because she failed to demonstrate prima facie eligibility for the release sought. It's important to note that this is her second attempt. As Your Honor noted, she was ordered removed in 2000. She had a full adjudication at that time. Lost her case and did not seek further review in this court and then spent another seven years in this country illegally. And as this court has recognized, was creative enough and fertile enough to come up with another reason to stay, or at least present the intent to stay. Also critical in this case is that the board's three published decisions, JHS, JWS, and SYG, are entitled to Chevron deference as an interpretation of what it means to be a refugee. The case that Petitioner's counsel provided to the court by way of Federal Rule of Appellate Procedure 28J, 11th Circuit case, again, only persuasive authority given that it's not from this court. But also in that case, the court completely failed to acknowledge those three published decisions. So I submit that that case is not at all constructive here in that those cases established a three-step inquiry that a petitioner must satisfy. She must establish the details of the specific policy at issue in her area, whether she in fact violated it, or I should say whether the alien violated it, and whether for doing so she would be punished, and also whether that punishment would rise to the level of persecution. Again, as the court noted earlier, having children is a change in personal circumstances. Petitioner's counsel has conceded that here, so that's not an issue. An alien must demonstrate changed country conditions. And the court's discussion with Petitioner's counsel towards the end of the argument there was about a comparison of the policy as it's been in place since 1979. The relevant reports in the record, I believe, are 1999 and 2006. There was some reference to a 2005 report, but regardless, a simple page-by-page comparison of the two reports shows that they're nearly identical. The situation is the same. It's unfortunate that China has this policy, but nonetheless it hasn't changed, or at least the enforcement of it hasn't changed substantially. I'm also curious that Petitioner's counsel says here at argument that the country reports are based on sporadic reporting. I'm not sure if that's a concession or an argument that they're now unreliable, even though these are intended to be his main source of proof for his case. But nonetheless, in 1999, the country reported a case that the Chinese government continues to implement comprehensive family planning policies. The 1998 profile states that the family planning policy is unevenly carried out. Exceptions are becoming the norm in rural areas. And then again in 2006, enforcement varied significantly from place to place. Noted the same rural exceptions that were stated in 1998. With respect to specific types of enforcement, Petitioner's counsel has cited alleged coercion would be a means of establishing the requisite force that would need to be shown as well for it to actually be a forced sterilization. In 1999, coercion was banned but still used. This is in the country report AR-172. Same thing in 2006. Education, excuse me, education, propaganda, economic incentives, but also the coercive threats of job loss or demotion, social compensation fees. That's also, excuse me, for the 1990 report, that's administrative record page 512. It just seems like we have a moving target. Depending on when you leave and when you apply and what the circumstances are, so every single case would then have to be looked at to say, well, in 2000, it was pretty bad, but it wasn't quite as bad as it was in 2002. And they got good in 2004. And then here we're trying to determine, I mean, that that could be endless litigation. Well, it already has been, Your Honor. And it obviously is. But that's why S.Y.G. and those those other cases are so critical because it does establish that case by case. But this is material change circumstances. It obviously doesn't mean a little bit different here because the standard is materially changed conditions. Correct. And as Your Honor's, I believe all three were curious as to what kind of proof could there be? What what would be enough? And Your Honor mentioned specific sources like professors that study their individuals in terms of repatriated, repatriated aliens being persecuted for having children outside of China. And as his counsel conceded, that's not here. Let's not say it couldn't be here in the right case, but it's not here. The best evidence for a petitioner in this case, unfortunately, for Fishner is an unauthenticated village committee letter that states that, yes, you've been you violated the policy. You must come back. You must be sterilized. You must be forcibly sterilized. There was no evidence of when that was mailed, how it was received. Fishner's mother, who provided an affidavit in this case, didn't mention the letter in her affidavit. Fishner herself didn't mention the letter, the village committee letter in her affidavit. So but also curiously, Fishner knew well enough to provide the mailing authentication for her mother's affidavit. So why do we have the authentication of that? But we don't have the authentication of this village committee letter. Also, that letter doesn't reference that her husband has legal permanent resident status, and that likely will materially affect whether she would be subjected to persecution at all. Given that Fishner's own evidence, the 1998 State Department Profile on Asylum Claims, says that according to a senior family planner, possession of LPR status in the United States is a key criterion for determining whether couples are subjected to the family planning policy. So they would be treated together. As Fishner stated in her affidavit, they would both go back. They would all go back together. So they would be treated as a couple. So nothing in this case, none of the evidence suggests that she would be persecuted if returned to China. Nothing establishes what policy was violated, whether she violated it, and how exactly she would be punished. And those, of course, this Court has not yet cited in a published case, SYG or JWS or JHS, but those decisions are entitled to Chevron deference and set forth a case-by-case framework by which these cases should be adjudicated. And this case falls short of satisfying that requirement. The Court has no further questions. Thank you, Your Honor. Thank you. Thank you. Your bottle. Judge Gould raises an interesting and pertinent question. The only question before this Court is, is there evidence in the record that establishes a material worsening campaign or enforcement of the one-child policy since 2000? As Government Counsel has stated, the 1998 profile states, stated that the enforcement was lax and uneven. Now, in 2006, the Respondent submitted a, excuse me, the Respondent submitted a document dated 2006 which reads, the Conference affirmed the requirement to strengthen the importance and urgency of population and population problems in the overall area and to develop the new complexion of population and family planning. Page 118 of the record. Page 149 of the record. The whole town, which is the document entitled the Communist Party of China on Jishin Township. The whole township will be mobilized and will take all possible measures to make sure that all women with two daughters are sterilized and all late-term pregnancies are terminated. Page 152 of the record. The village community cadres will be in charge of certain groups and targeted people. Our breakthrough to sterilize women with two daughters and our focus is to abort late-term pregnancies. None of this documentation was available at the time of the Petitioner's first hearing. The 2006 country report states that one of the most egregious examples is in a province which imprisoned 130,000 people and their families in population camps. The 2007 report for the first time listed Fujian province as areas where forced abortions and sterilizations are reported. None of this documentation, objectively reasonable documentation, was available at the time of the Petitioner's first hearing. And that is the only issue before the court. The question before this court and the precedent before this court is, is there a reasonable possibility that the Petitioner can make out a claim for asylum? A reasonable possibility. His documentation clearly meets the Petitioner's burden, that a reasonable person such as ourselves would have a fear, a slight but discernible fear, as the U.S. Supreme Court stated in Cardozo-Fonseca, that having three children without Chinese government's permission could result in forced sterilization. The case that you have just argued, and this was decided and published last month in Miami, Jane, Well, the 11th Circuit is not, that's not an administrative decision, although Chevron doesn't apply. The case, this situation is clearly distinguished by the fact that the United States and the U.S. Supreme Court   It's not an administrative decision, In S.Y.G., in stark contrast to the petitioner in S.Y.G., the petitioner in our case was never found to be not credible. The petitioner in S.Y.G. was found to be not credible by the immigration judge, and the documentation that's been submitted is significantly more than those submitted in S.Y.G. What about J.S.W.? J.S.W., again, immigration judge Van Wyk found that petitioner Schau was not credible regarding his assertions or what was happening to his wife while she was in hiding. So, again, in stark contrast, the petitioner in this case was never found not to be credible. And so that And what's your response to opposing counsel's observation that because the petitioner's spouse is a lawful permanent resident, she would not be in the situation that you describe in terms of being subject to forced sterilization? The nationality laws are clear, and it's abundant throughout the record. Well, it speaks to whether or not there's lawful status. Yes, it does. But if one of the parents remains a Chinese citizen, the children, the offspring of that person will also be considered Chinese citizens once they are returned to China and entered into the household registration booklet. That's how it works in China. Once you return to China, you don't become a Chinese citizen. It's once you enter into the household registration booklet, you are then considered a Chinese citizen, able to obtain free education, able to obtain free medical care. Once you're a Chinese citizen, you're counted towards the population and control policy. All right. I understand your argument. So we strongly urge that this Court grant the motion to reopen, remand to the immigration judge for further proceedings on the hearings. And also there were four cases, three other cases that were submitted on brief with this case, and we would ask the Court to do so in those cases as well. You were attorney in all those. Yes, I was, Your Honor. And this is not a slippery slope argument. This is very specific. People who have hearings before 2004 who are now coming forward and asking and showing this changed country conditions, they're the ones who are able to apply for this relief. This is not a gaming of the system. This is not an opening the doors to every person who can. This is objective evidence that only fits into a small category of persons. How did you happen to get all the cases, all these cases? I happen to be located near the Chinatown area, Your Honor, and that's where most Chinese people are based, even though they live throughout the country. And I just happen to be well known. Where it got out. Yes, exactly. Thank you. Thank you. It was a pleasure to argue in front of all three of you, and it's my honor. Thank you. Thank you. Thank you, both counsel. The case just argued and submitted for decision by the court.
judges: Gould, Rawlinson, Beistline